UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CECIL YOUNG,<br>          Plaintiff,<br><br>          v.<br><br>VICTOR RODRIGUEZ,<br>          Defendant. | No. 3:10-cv-01175 (JAM) |

**RULING GRANTING MOTION FOR SUMMARY JUDGMENT**

This is a case about the arrest of a protestor for making excessive noise with a bullhorn outside the home of the mayor of Bridgeport, Connecticut. Notwithstanding his criminal conviction stemming from this arrest, plaintiff has sued the arresting officer, claiming that the officer arrested him in violation of his First Amendment right to free speech and to petition the government for redress of grievances. For reasons set forth below, I conclude that an objectively reasonable police officer would not have known or believed that plaintiff's arrest would violate the First Amendment. Accordingly, I grant defendant's motion for summary judgment on the ground that he has qualified immunity from this lawsuit.

**Background**

Plaintiff Cecil Young is a community activist in Bridgeport, Connecticut. One day in February 2009, he decided to conduct a protest about public health issues outside the mayor's home in a residential section of Bridgeport. The mayor was not there, and plaintiff waited outside the house until the mayor's wife and three-year-old child came home at approximately noontime. Plaintiff then began to protest outside the house using a bullhorn. The mayor's wife called the police, and defendant Victor Rodriguez, a police officer for the City of Bridgeport,

soon arrived on the scene. The mayor's wife told defendant that plaintiff's noise with the bullhorn was disturbing her son and that plaintiff had refused her request to stop.[1] Defendant's supervisor was also on the scene and told plaintiff that if he did not stop, he would be subject to arrest, but plaintiff did not comply. Defendant then arrested plaintiff on a charge of breach of peace. Defendant also cited plaintiff for an infraction of the City of Bridgeport's municipal noise ordinance.[2]

Several months later, plaintiff went to trial in Connecticut state court on a substitute charge of disorderly conduct stemming from his arrest outside the mayor's home.[3] After hearing testimony from plaintiff, defendant, and the mayor's wife, Judge Frank Iannotti of the Connecticut Superior Court concluded beyond a reasonable doubt that plaintiff had engaged in disorderly conduct—specifically, that he had acted with intent to cause inconvenience, annoyance or alarm, or recklessly created a risk thereof, and that he had annoyed another person and also made unreasonable noise. Doc. #17-3 at 195–99. Judge Iannotti described in part the evidence that supported his verdict:

> I – I don't think that Mr. Young, as he sits here this afternoon, is a bad person. I don't think he was out to hurt anybody. I think he was doing what he felt was the right thing. But I think that he was doing it in a fashion that was the wrong way to

---

[1] Although plaintiff disputes that he was disturbing the mayor's son and that the mayor's wife asked him to stop, he does not dispute that this was what the mayor's wife told defendant after he responded to the scene. The parties otherwise disagree whether plaintiff trespassed on the mayor's property or front porch. These factual disputes are not material to the Court's resolution of this motion for summary judgment.

[2] Bridgeport City Ordinance 8.80.050 provides in relevant part: "A. It is unlawful for any person to make, continue or cause to be made or continued any noise in violation of this chapter which reasonably annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of others." Among the enumerated prohibited acts in 8.80.050 § C3:
> Yelling, shouting, hooting, whistling or singing on the public street at any time or place so as to reasonably annoy or disturb the quiet, comfort or repose of any persons in any office, or in any dwelling, hotel, or other type of residence, or of any person in the vicinity.

[3] *See* Conn. Gen. Stat. § 53a-182 (providing in relevant part that "(a) A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: . . . (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise").

>express himself and that he did it in a way that was too loud. Using the bullhorn – using the bullhorn right outside someone's private home[,] repeating to do it in a loud fashion after someone repeatedly asked you to stop and especially when there's a woman, any person, in this case a woman with a young child and there's any sign that there's such an annoyance to the point where the child may be in fear, and it's a three and a half year old child, I think your obligation at some point in time is to cease that type of [activity].

Doc. #17-3 at 197–98.

In light of plaintiff's conviction on the charge of disorderly conduct, the prosecutor *nolled* the infraction charge for violation of the Bridgeport noise ordinance. Plaintiff subsequently filed this federal lawsuit against defendant under 42 U.S.C. § 1983, claiming that defendant's arrest of plaintiff was a violation of plaintiff's First Amendment rights, and defendant has now moved for summary judgment.

## Discussion

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Group, LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party. *See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)).

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has recently explained that "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083–84 (2011)). In this manner, "[q]ualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, ___ S. Ct. ___, 2014 WL 2765285 (U.S. June 19, 2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. at 2085).

Here, it is clear that the qualified immunity doctrine warrants a grant of summary judgment in defendant's favor.[4] To begin with, plaintiff has not adduced evidence to suggest that defendant singled plaintiff out for arrest on the ground of any disagreement with the content of plaintiff's speech. Instead, all facts show that defendant—a line police officer—followed his supervisor's order to arrest plaintiff on the ground that he was making excessive noise. Indeed, the findings made against plaintiff when he was convicted after trial for disorderly conduct conclusively establish that plaintiff intentionally made an unreasonable amount of noise that fully justified his arrest and that also amounted to a violation of Bridgeport's noise ordinance.[5]

---

[4] Plaintiff initially sought injunctive relief and to raise a facial challenge under the First Amendment to Bridgeport's noise ordinance. He abandoned these claims at oral argument, and the only claim remaining is for damages under § 1983 for the arrest of plaintiff in alleged violation of his First Amendment rights.

[5] Given that the facts known to defendant amply established probable cause for at least one offense, it is of

To be sure, the fact of a valid arrest under the Fourth Amendment does not resolve whether an arrest is valid under the First Amendment. *See Johnson v. Bax*, 63 F.3d 154 (2d Cir. 1995). Yet, "the First Amendment does not insulate individuals from criminal sanction merely because they are simultaneously engaged in expressive activity." *Jones v. Parmley*, 465 F.3d 46, 58 (2d Cir. 2006) (Sotomayor, J.). In any event, I need not resolve the merits of plaintiff's First Amendment claim, because the qualified immunity inquiry requires me to decide only whether an objectively reasonable officer would have known that the arrest of plaintiff would violate the First Amendment.

I have little difficulty concluding that an objectively reasonable police officer would not have known it to violate the First Amendment to cite or arrest a person for intentionally making excessive noise with a bullhorn in a residential neighborhood and at potential risk to a three-year-old child. To begin with, police officer was certainly not required to presume that his city's noise ordinance (or that a breach of peace arrest based on conduct in violation of the noise ordinance) violated the First Amendment. *See Vives v. City of New* York, 405 F.3d 115 (2d Cir. 2004) (police officers had qualified immunity from First Amendment challenge to an arrest under a statute that had not been declared unconstitutional). Moreover, at the time of plaintiff's arrest in 2009, the Second Circuit had upheld against First Amendment challenge the enforcement of a noise ordinance that is materially indistinguishable from Bridgeport's noise ordinance and that extended by its terms to the type of conduct that plaintiff engaged in with his bullhorn in this case. *See Howard Opera House v. Urban Outfitters*, 322 F.3d 125, 127–28 (2d Cir. 2003) (rejecting First Amendment overbreadth and vagueness challenge to noise ordinance of Burlington, Vermont that prohibited "unreasonable noise" including noise that "disturbs,

---

no significance under the Fourth Amendment that plaintiff was arrested for a different charge (breach of peace) than the charge for which he was later convicted (disorderly conduct). *See Devenpeck v. Alford*, 543 U.S. 146, 153–54 (2004); *Zalaski v. City of Hartford*, 723 F.3d 382, 390 n.4 (2d Cir. 2013).

injures or endangers the peace or health of another or when it endangers the health, safety or welfare of the community") (quoting Burlington Code of Ordinances § 21-13(b)(1)); *see also Costello v. City of Burlington*, 632 F.3d 41 (2d Cir. 2011) (rejecting as-applied First Amendment challenge to enforcement of Burlington noise ordinance).

At oral argument, plaintiff conceded that the Bridgeport noise ordinance was not materially different from the Burlington ordinance upheld in *Howard Opera House*, but he contended that it was a violation of plaintiff's First Amendment rights for defendant to arrest him after plaintiff had agreed to stop making excessive noise. Regardless whether the facts support this argument, it is tantamount to claiming that police may not arrest a speeder who agrees to drive more slowly or a bank robber who agrees to return the loot. Nor could plaintiff cite any precedent providing that the First Amendment bars the arrest of a speaker as soon as the suspect refrains from activity that falls outside First Amendment protection. The absence of precedent for plaintiff's strained and novel theory precludes any conclusion that defendant should have known that his arrest of plaintiff was a violation of the First Amendment.

Defendant's motion for summary judgment is GRANTED.

It is so ordered.

Dated at Bridgeport this 8th day of July 2014.

/s/   Jeffrey Alker Meyer
Jeffrey Alker Meyer
United States District Judge